# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
08/18/2017
CT Log Number 531785429

**TO:**     Alicia Odette
            Porsche Cars North America, Inc.
            1 Porsche Dr
            Atlanta, GA 30354-1654

**RE:**     **Process Served in Massachusetts**

**FOR:**    Porsche Cars North America, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Madison Food Corp. and Harriet Ann Slawsby, on behalf of themselves and all others similarly situated, Pltf. vs. BMW AG, et al., Dfts. // To: Porsche Cars North America, Inc. |
| **DOCUMENT(S) SERVED:** | Citation, Cover Sheet, Complaint |
| **COURT/AGENCY:** | Suffolk County Superior Court, MA<br>Case # 172496BLS |
| **NATURE OF ACTION:** | Fraudulent Concealment Tolled the Statute of Limitations |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/18/2017 at 09:30 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | Daryl D. Andrews<br>ANDREWS DEVALERLO LLP<br>265 Franklin St., Suite 1702<br>Boston, MA 02110<br>617-936-2796 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1Z0399EX0132088802<br><br>Image SOP<br><br>Email Notification,  Alicia Odette  alicia.odette@porsche.us<br><br>Email Notification,  Sherie Boykin  sherie.boykin@porsche.us<br><br>Email Notification,  Amy McLaren  cls-ctsopsupport@wolterskluwer.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>155 Federal St Ste 700<br>Boston, MA 02110-1727<br>617-757-6404 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

## Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _17-2496 BLS_

_Madison Food Corp. et_, PLAINTIFF(S),

v.

_BMW AG et al._ , DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO _Porsche Cars of America, Inc._ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Suffolk Sup. (BLS)_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your **signed original response** with the Clerk's Office for Civil Business, _Suffolk_ Court, _3 Pemberton Sq._ _Boston_ (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: _265 Franklin St. Suite 1702, Boston MA 02110._

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

A true copy Attest:
_Joseph P. Casey_
Deputy Sheriff Suffolk County
_8-18-17_

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20_____.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

_____

Dated: _____, 20___      Signature: _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

| CIVIL ACTION COVER SHEET | DOCKET NO(s) **B.L.S.** | Trial Court Of Massachusetts Superior Court Department County: **SUFFOLK** |
|---|---|---|

PLAINTIFF(S) **MADISON FOOD CORP. and HARRIET ANN SLAWSBY**

DEFENDANT(S) BMW AG, BMW NORTH AMERICA, LLC, VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI AG, AUDI OF AMERICA, LLC, DR. ING. H.C.F. PORSCHE AG, PORSCHE CARS OF NORTH AMERICA, INC., BENTLEY MOTORS LIMITED, DAIMLER AG, MERCEDES-BENZ USA, MERCEDES-BENZ VANS LLC, MERCEDES-BENZ US INTERNATIONAL

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number
GLEN DEVALERIO (BBO #122010), DARYL ANDREWS (BBO # 658923)
ANDREWS DEVALERIO, LLP
265 FRANKLIN ST., SUITE 1702
BOSTON, MA 02110
617-936-2796

ATTORNEY (if known)

Origin Code Original Complaint

BLS 2

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? °
_____ (B) (x) Yes ( ) No

BLS 2 Claims of Unfair Trade Practice Involving Complex Issues

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

As set forth in detail in the attached Complaint, this action involves claims for unfair trade practices, including price fixing allegations, against the German luxury carmakers, in violation of G.L. c. 93A. The Complaint asserts class action allegations on behalf of a class of all Massachusetts residents who purchased German luxury cars from the 1990s through the present.

° A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____

DATE: 8/7/17

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
BUSINESS LITIGATION SESSION
C.A. NO. 17-2496 BLD

MADISON FOOD CORP., and HARRIET
ANN SLAWSBY, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.

BMW AG, BMW NORTH AMERICA, LLC,
VOLKSWAGEN AG, VOLKSWAGEN
GROUP OF AMERICA, INC. AUDI AG,
AUDI OF AMERICA, LLC, DR. ING H.C.F.
PORSCHE AG, PORSCHE CARS OF
NORTH AMERICA, INC. BENTLEY
MOTORS LIMITED, DAIMLER AG,
MERCEDES-BENZ USA, MERCEDES-
BENZ VANS, LLC, and MERCEDES-BENZ
US INTERNATIONAL,

      Defendants.



## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

    Madison Food Corp. and Harriet Ann Slawsby ("Plaintiffs"), on behalf of themselves and

all others similarly situated (the "Class" as defined below) upon personal knowledge as to the

facts pertaining to themselves and upon information and belief as to all other matters, and based

on the investigation of counsel, bring this class action for damages, injunctive relief, and other

relief pursuant to Massachusetts General Laws, chapter 93A ("93A") and allege as follows:

## NATURE OF ACTION

1.      This action arises out of a two-decade long conspiracy among German automotive manufacturers to unlawfully increase prices on all German Luxury Vehicles.[1] This putative class action is brought against Volkswagen AG, Volkswagen Group of America, Inc. (together "Volkswagen"), Audi AG, Audi of America Inc., Audi America LLC (together "Audi") Dr. Ing h.c.F. Porsche AG, Porsche Cars of North America, Inc. (together "Porsche"), Bentley Motors Limited ("Bentley"), Daimler Aktiengesellschaft ("Daimler AG"), Mercedes-Benz US International, Mercedes-Benz USA, Mercedes-Benz Vans LLC (together "Mercedes"), BMW AG and BMW North America, LLC (together "BMW") (collectively "Defendants"), and named and unnamed co-conspirators for agreeing to share commercially sensitive information and reach unlawful agreements regarding German Luxury Vehicle technology, costs, suppliers, markets, emissions equipment and other competitive attributes thereby causing injury to Plaintiffs and the Class (defined below).

2.      In July 2017, the German publication *Der Spiegel* reported that the major German automakers formed a secret cartel in the 1990s to collude on fixing prices of a diesel emissions treatment called AdBlue, sparking a worldwide panic. Further, *Bloomberg* reported on July 31, 2017 that the Defendants colluded on dozens of technology-related matters and that "Germany's auto industry is built on collusion."

---

[1] "German Luxury Vehicle" as used herein refers to vehicles sold by the Defendants under the following five brands: Mercedes-Benz, Porsche, Audi, BMW, and Bentley. Defendant Daimler owns the Mercedes-Benz brand. Volkswagen owns the Audi, Porsche and Bentley brands.

3.     The conspiracy at issue is massive in both scope and time.  In the last five years alone, Defendants met and conspired through at least 60 working groups, and thousands of meetings, involving more than 200 employees.

4.     In a document dated July 4, 2016, Volkswagen divulged to German antitrust officials the existence of an automotive manufacturing conspiracy concerning the "development of ["Defendants"] vehicles, costs, suppliers, and markets for many years, at least since the 1990s, to the present day."

5.     The European commission ("EC") is currently investigating defendants concerning potential anti-competitive activities.

6.     Volkswagen and Daimler have also reportedly admitted to participating in the unlawful cartel and applied for leniency from the EC in exchange for their cooperation in the probe.

7.     As discussed herein, among the many subjects of Defendants' unlawful collusion were vehicle development and engines, supplier and diesel emissions systems in German Luxury Vehicles.

8.     Because of Defendants' overarching conspiracy, Plaintiffs and the Class paid for German Luxury Vehicles at unlawfully inflated prices.

9.     The business activities of the Defendants caused injury in the Commonwealth of Massachusetts to Plaintiffs and members of the Class, who are all residents of the Commonwealth of Massachusetts.

10.     Plaintiffs seek to represent all persons and entities from at least as early as January 1, 1990 through such time as the anti-competitive effects of the Defendants' conduct ceased ("Class Period") purchased or leased a German Luxury Vehicle in Massachusetts which was manufactured or sold by any of the Defendants.

## JURISDICTION AND VENUE

11.     Plaintiffs bring this action under 93A and to secure equitable and injunctive relief against Defendants. Plaintiffs also assert claims for actual and exemplary damages pursuant to unjust enrichment laws, and seek to obtain restitution, recover damages and secure other relief against the Defendants for violation those laws. Plaintiffs and the Class also seek attorneys' fees, costs, and other expenses under the laws of the Commonwealth of Massachusetts.

12.     This court has jurisdiction over the subject matter of this action pursuant to 93A. All named plaintiffs above are citizens of the Commonwealth of Massachusetts and all purchased and/or leases of German Luxury Vehicles were made in the Commonwealth.

13.     Plaintiffs seek acceptance into the Business Litigation Session based on Superior Court Administrative Directive 17-1. The claims asserted herein involve unfair trade practices involving complex matters.

14.     This court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business in the Commonwealth of Massachusetts; (b) directly or indirectly sold or marketed substantial quantities of German Luxury Vehicles in the Commonwealth, (c) had substantial aggregate contacts with the Commonwealth or (d) were engaged in an illegal conspiracy in restraint of trade that was directed at and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the Commonwealth, and have purposefully availed themselves of the laws of the Commonwealth.

15.   Defendants engaged in conduct both inside and outside of the Commonwealth that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects on commerce within the Commonwealth.

16.   Defendants conspiracy and unfair and deceptive business practices described herein caused persons in the Commonwealth who purchased or leased a new German Luxury Vehicle to pay inflated prices.

## PARTIES

### Plaintiffs

17.   Madison Food Corp. ("Madison") is a Massachusetts corporation with a principal office in the Commonwealth of Massachusetts. Madison purchased a least one or German Luxury Vehicle from Defendants at unlawfully inflated prices during the relevant Class.

18.   Harriet Ann Slawsby ("Slawsby") resides in the Commonwealth of Massachusetts. Slawsby purchased a least one or German Luxury Vehicle from Defendants at unlawfully inflated prices during the relevant Class.

### Defendants

19.   When Plaintiffs refer to a corporate family or companies by a single name in the Complaint, they are alleging that one or more employees or agents of entities within the corporate family engaged in conspiratorial acts about every company in the family. The individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family. The individual participants entered agreements on behalf of their respective corporate families. As a

5

result, those agents represented the entire corporate family with respect to such conduct, and the corporate family was party to agreements those agents reached.

### THE VOLKSWAGEN DEFENDANTS

20. Defendant Volkswagen AG is a German Corporation with its principal place of business in Wolfsburg, Germany. Volkswagen AG is the parent company of Volkswagen Group of America, Inc., Audi AG, Porsche AG, and Bentley. In 2016, Volkswagen AG was the largest auto manufacturer in the world. Volkswagen AG sales revenue in 2016 was over $217 billion.

21. Defendant Volkswagen Group of America, Inc. is incorporated in New Jersey. Volkswagen Group of America, Inc. advertised, marketed, and sold the German Luxury Vehicles at issue throughout the Commonwealth during the Class Period.

### THE AUDI DEFENDANTS

22. Defendant Audi AG is a German Corporation with its principal place of business in Ingoltadt, Germany. Audi AG is the parent company of Audi of America, Inc. and Audi of America, LLC and is a wholly-owned subsidiary of Volkswagen AG. Audi AG designed, developed, manufactured and sold the German Luxury Vehicles at issue throughout the Commonwealth during the Class Period.

### THE PORSCHE DEFENDANTS

23. Defendant Dr. Ing h.c.F Porsche AG is a German corporation with its principal place of business in Stuttgart, Germany. Porsche AG is a wholly-owned subsidiary of Volkswagen

AG. Porsche AG designed, developed, manufactured and sold the German Luxury Vehicles at issue throughout the Commonwealth during the Class Period.

24.    Defendant Porsche Cars North America Inc. is incorporated in Delaware with its principal place of business in Georgia. Porsche Cars North America, Inc. is a wholly-owned U.S. subsidiary of Porsche AG and advertised, marketed, and sold the German Luxury Vehicles at issue throughout the Commonwealth during the Class Period.

### BENTLEY

25.    Bentley Motors Limited Company ("Bentley") is organized under the laws of the United Kingdom. Bentley has been a subsidiary of Volkswagen AG since 1998.

### DAIMLER AG

26.    Defendant Daimler Aktiengesellschaft ("Daimler AG") is a foreign corporation headquartered in Stuttgart, Baden– Wurttemberg, Germany. Daimler AG designed, engineered, manufactured, tested, supplied, sold, and distributed the German Luxury Vehicles at issue throughout the Commonwealth during the Class Period. Daimler AG is the parent company of Mercedes-Benz USA, LLC and controls the subsidiary which acts as the sole distributor for Mercedes-Benz vehicles in the United States. Daimler AG owns 100% of the capital share in Mercedes-Benz USA. LLC.

## THE MERCEDES DEFENDANTS

27.    Defendant Mercedes-Benz USA, LLC ("Mercedes") is a Delaware limited liability corporation. Mercedes designed, manufactured, marketed, and sold the German Luxury Vehicles at issue purchased throughout the Commonwealth during the class.

28.    Defendant Mercedes-Benz U.S. International, Inc. and Defendant Mercedes-Benz Vans, LLC are wholly owned subsidiaries of Daimler AG.

## THE BMW DEFENDANTS

29.    Defendant Bayerische Motoren WErke AG ("BMW AG") is a German holding company and vehicle manufacturer. BMW AG is headquartered in Germany. BMW AG, together with its subsidiaries, developed, manufactured, and sold cars and motorcycles, including the German Luxury Vehicles at issue throughout the Commonwealth during the Class Period.

30.    Defendant BMW North America, LLC is the United States importer of BMW vehicles.

### Agents and Co-Conspirators

31.    Each defendant acted as the principal agent for the Defendants with respect to the acts, relations, and common course of conduct alleged herein.

32.    Robert Bosch GmbH is a German multinational engineering and electronics company headquartered in Gerlingen, Germany. Robert Bosch GmbH, directly and/or through its North American subsidiary Robert Bosch LLC designs, manufactures, develops, and supplies automotive technology.

33.     Robert Bosch LLC is a U.S. subsidiary of Robert Bosch GmbH and is wholly owned and controlled by Robert Bosch GmbH.   Robert Bosch LLC worked in conjunction with its parent company – Robert Bosch GmbH – to design, manufacture, develop, and supply automotive technology to the Defendants for use in German Luxury Vehicles.

34.     Various other persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

35.     Whenever in this complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.    The German Luxury Vehicle Conspiracy

36.    Since at least the 1990s, Defendants have shared commercially sensitive information and reached unlawful agreements regarding German Luxury Vehicle technology, costs, suppliers, market, emissions equipment and other competitive attributes.

37.    This conspiracy has prompted competition authorities from multiple jurisdictions, including the United States, to open investigations into Defendants' unlawful conduct.

38.    In the last five years alone, Defendants shared competitively sensitive information through 60 working groups and thousands of meetings. These contacts involve at least 200 employees.

### 1.    AdBlue Tank Agreements

39.    As part of Defendants overarching conspiracy in the German Luxury Vehicles market, Defendants coordinated the size of AdBlue tanks.

40.    AdBlue is an aqueous reductant agent that is used with a Selective Catalytic Reduction ("SCR") system to clean the emissions disseminated from diesel vehicles. AdBlue tanks are also called Diesel Exhaust Fluid ("DEF"). Urea is a component of DEF. Specifically, 32.5% of high-grade environmental urea and 67.5% deionized water make up what is known as DEF or AdBlue. DEF or AdBlue along with the SCR system enables auto manufacturers to remain compliant with emission standards.

41.    In September 2008, Defendants all agreed to use small eight-liter AdBlue tanks to reduce costs. Defendants reasoned that the small tanks would save each automaker approximately

€80 per vehicle. Space was also a consideration in the decision. The small Ad Blue tank created more cargo room for luxury items such as golf clubs and premium vehicle options.

42.   In 2010, Defendants unlawfully agreed to increase the size of AdBlue tanks in the US to 16-liters. Defendants reached this agreement knowing that a 16-liter AdBlue tank was insufficient to meet rising U.S. emissions standards. Defendant Audi wrote in an email that a "minimum tank volume of 19 liters" was needed based on "average AdBlue consumption" to comply with U.S. requirements. German publication, *Der Spiegel,* reported that the Defendants found it "absolutely necessary to have a 'coordinated approach' with respect to tank sizes."

43.   Defendant Volkswagen was insistent that the agreements on AdBlue tank size were necessary to ensure that U.S. emissions regulators did not scrutinize its emissions control systems. Volkswagen feared that different size AdBlue tanks would cause U.S. emissions regulators to question how some companies were getting away with less Ad Blue while others needed substantially more solution to clean their emissions.

44.   Volkswagen knew it could still pass U.S. emissions testing with a 16-liter tank because it had designed a work around to enable is vehicles to pass emissions testing without adequately sized AdBlue tanks.

45.   This workaround is commonly referred to as a "defeat device" and is at the heart 2015 NOx defeat device scandal that has been widely reported all over the world. Volkswagen and its subsidiaries installed software in Volkswagen, Audi, and Porsche vehicles that could sense when the car was being tested and make emission control adjustments so that the vehicle dispersed fewer emissions during testing than on the road.

46.   Volkswagen pleaded guilty to using this defeat device software to mislead the Environmental Protection Agency ("EPA") and U.S. consumers regarding the environmental

friendliness of their "clean" vehicles. Volkswagen paid over $20 billion in civil and criminal penalties for deploying the "defeat device" to cheat emissions compliance regulations.

47. It has recently come to light, however, that the cheating scandal involves all of the Defendants and affects more than just diesel automobiles.

## 2. Government Investigations into Price-Fixing

48. On July 22, 2017, the European Commission ("EC") announced that it was investigating allegations of an antitrust cartel among a group of major German Luxury Vehicle manufacturers including Defendants Volkswagen and its subsidiaries, Audi and Porsche, Daimler, and its subsidiaries Mercedes-Benz and BMW.

49. European antitrust officials, the EC and is German counterpart, the Bundeskartellamt, have all confirmed that they received information from the Defendants that may relate to the operation of a trust or cartel as early as 1990s.

50. As part of its investigation, the EC has already confiscated documents from the Defendants and interviewed witnesses about the alleged cartel.

51. According to Volkswagen's admissions to German antitrust officials, Defendants entered into potentially unlawful agreements regarding "vehicle development, brakes, petrol and diesel engines, such as in transmissions as well as exhaust treatment systems."

52. According to reports, Volkswagen and Daimler have both come forward to European regulators admitting participation in an antitrust conspiracy in exchange for leniency. Daimler has reportedly obtained leniency while Volkswagen is purportedly eligible for a reduction in fines in exchange for its cooperation.

53. The United States Department of Justice's Antitrust Division announced on July 25, 2017 that it is also investigating the matter.

### B. Defendants Have Repeatedly Violated U.S. Laws

54. In recent years, the automotive industry has been rattled by a wave of scandals involving various schemes by major automobile manufacturers to evade U.S. regulations.

55. Defendants Volkswagen and Daimler are recidivist offenders. In 2015, Volkswagen admitted that it cheated diesel emissions tests, and was the target regulatory investigations in multiple countries, including the United States. In the United States alone, Volkswagen paid more to $20 billion and criminal penalties and civil restitution. Volkswagen also agreed to pay more than $157 million to 10 states, including Massachusetts, to settle environmental lawsuits over the company's diesel emissions-cheating scandal.

56. In 2016, European truck makers MAN, Daimler, DAF, Iveco, and Volo-Renault were revealed to be involved in a truck price fixing scandal. All except Volkswagen-owned MAN paid record fines, which Volkswagen avoided paying by being the first participant in the illegal cartel to bring the unlawful conduct to regulators' attention. Daimler paid over $1 billion in fines to the EC for its role in this price-fixing conspiracy.

### C. The Structure of the Market Renders the Conspiracy More Plausible

57. The structure and other characteristics of the German Luxury Vehicle market in the United State are conducive to collusion. Specially, the German Luxury Vehicle market: (1) has high barriers to entry; (2) has inelasticity of demand; and (3) is highly concentrated.

1. <u>High Barriers to Entry</u>

58. A collusive arrangement that lowers costs for manufacturers while simultaneously increases the price of the product to consumers would, under basic economic principles, attract new entrants to benefit from the supra-competitive pricing. Where, however there are significant barriers to entry, new entrants are less likely to enter the market. Thus, barriers to entry help facilitate the formation and maintenance of a cartel.

59. There are substantial barriers that preclude, reduce or make more difficult entry in to the German Luxury Vehicle market. A new entrant into the business would have costly and lengthy startup costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor and long-standing customer relationships.

60. In addition, switching costs for purchasers of German Luxury Vehicles are extremely high, which effectively locks consumers into their purchase and makes it more difficult for new entrants to succeed in the market.

2. <u>Inelasticity of Demand</u>

61. "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity of that product that is sold. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite the price increase.

62. For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, the increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy

14

altogether.   Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

63.     Demand for German Luxury Vehicles is highly inelastic because there are no close substitutes for these products.

### 3. The Market is Highly Concentrated

64.     A highly-concentrated market is more susceptible to collusion and other anti-competitive practices.

65.     The Defendants make up 100% of the German Luxury Vehicle market.

66.     In 2016, Daimler reported over €89 billion in revenue for its Mercedes-Benz cars division, which is largely comprised of German Luxury Vehicles.

67.     In 2016, BMW reported over €86 billion in revenue for its automotive division, which is comprised of BMW, Mini and Rolls-Royce vehicle sales. BMW vehicles comprised the majority (83%) of those sales.

68.     In 2016, Volkswagen reported over €105 billion in revenue for its VW passenger car division, over €59 billion for its Audi division, and over €22 billion or its Porsche division.

69.     Capital requirements and technologies changes make the Luxury Vehicle market difficult for new entrants generally. The collusion over Defendants' vehicles, costs, suppliers, and markets increases the barriers to entry for new auto manufacturers.

70.     Volkswagen owns both Audi and Porsche and in 2016 was the largest vehicle manufacturer in the world.

## CLASS ACTION ALLEGATIONS

71. Plaintiffs bring this action on behalf of themselves and as a class-action under Rule 23 of the Massachusetts Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following Class:

all persons and entities who, during the Class Period, purchased or leased a new German Luxury Vehicle in the Commonwealth of Massachusetts not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant or any co-conspirator of a Defendant.

72. Excluded from the Class are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, persons who purchased German Luxury Vehicles directly for resale.

73. While Plaintiffs do not know the exact number the members of the Class, Plaintiffs believes there are thousands of members of the Class.

74. Common questions of law and fact exist as to all members of the Class. This is particularly true given the nature of the Defendants' conspiracy, which was generally applicable to all members of the Class, thereby making relief as a whole appropriate to the entire Class. Such questions of law and fact common to the Class include, but are not limited to:

(a) Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to artificially inflate the price of German Luxury Vehicles sold in the Commonwealth of Massachusetts;

(b) The identity of the participants of the alleged conspiracy;

16

(c) The duration of the alleged conspiracy and the acts carried out by Defendants and

their co-conspirators in furtherance of the conspiracy;

(d) Whether the alleged conspiracy violated chapter 93A, as alleged in the First Claim for

Relief;

(e) Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiffs

and the members of the Class thereby entitling Plaintiffs and the members of the Class to

disgorgement of all benefits derived by Defendants, as alleged in the Second Claim for

relief;

(f) Whether the conduct of the Defendants and their co-conspirators as alleged in this

Complaint, caused injury to the business or property of Plaintiffs and the members of the

Class;

(g) The effect of the alleged conspiracy on the price of German Luxury Vehicles sold in

the Commonwealth during the Class Period.

(h) Whether Plaintiffs and members of the Class had any reason to know or suspect the

conspiracy, or any means to discover the conspiracy;

(i) Whether the defendants and their co-conspirators fraudulently concealed the

conspiracy's existence from Plaintiffs and the members of the Class;

(j) The appropriate injunctive and related equitable relief for the Class; and

(j)The appropriate class-wide measure of damages for the Class.

75. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs and all members of the Class are similarly affected by the Defendants' wrongful conduct in that they paid artificially inflated prices for German Luxury Vehicles purchased from the Defendants and/or their co-conspirators.

76. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims the other members of the Class. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other members of the Class. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class action litigation in the Commonwealth.

77. Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

78. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit many similarly situated persons to prosecute the common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

79. The prosecution of separate actions by individual members all the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A. The Statute of Limitations Did Not Begin to Run Until Plaintiffs Discovered Their Claims on July 21, 2017

80.     Plaintiffs repeat and re-allege he allegations set forth above. Plaintiffs and the members of the Class had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on notice of the claims set forth herein, until (at the earliest) July 21, 2017, the date when *Der Spiegel* reported, for the first time to the public, that Volkswagen had disclosed to German officials its participation in the unlawful conspiracy alleged herein.

81.     Plaintiffs and the members of the Class are consumers and businesses that purchased or leased Defendants' German Luxury Vehicles not for resale. They had no direct contact or interaction with the Defendants and therefore have no means by which they could have discovered the combination and conspiracy described in this complaint before July 21, 2017, the date when *Der Spiegel* reported, for the first time to the public, that Volkswagen had disclosed to German officials its participation in the unlawful conspiracy alleged herein.

82.     No information was available in the public domain prior to July 21, 2017, the date when *Der Spiegel* reported that Volkswagen had disclosed to German officials its participation in antitrust violations resulting from coordination with German Auto- Manufacturers about the development of their vehicles, costs, suppliers and strategies for controlling emissions from at least the 1990s to the present day. Plaintiffs and members of the Class had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with other manufacturers and suppliers, much less the fact that they and their co-conspirators had engaged in the combination and conspiracy alleged herein.

83.   For these reasons, the statute of limitations as to Plaintiffs' and the Class' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and members of the Class have alleged in the Complaint.

## B. Fraudulent Concealment Tolled the Statute of Limitations

84.   In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Class. Plaintiffs and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until July 21, 2017, the date when *Der Spiegel* reported, for the first time to the public, that Volkswagen had disclosed to German officials its participation in the unlawful conspiracy alleged herein.

85.   Before that time, Plaintiffs and members of the Class were unaware of Defendants' unlawful conduct, and did not know before then that they were continuing to pay supra competitive prices for German Luxury Vehicles throughout the Commonwealth of Massachusetts during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and members of the Class that even hinted to Plaintiffs that they were being injured by Defendants' unlawful conduct.

86.   The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were concealed and carried out in a manner that precluded detection.

87.   Defendants' and their co-conspirators' conspiracy was inherently self-concealing. German Luxury vehicles are not exempt from antitrust regulation and, thus, plaintiffs reasonably believed that the industry was competitive. A reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' German Luxury Vehicle prices before July 21, 2017, at the earliest.

88.     Plaintiffs and the members of the Class could not have discovered the alleged contract, combination, or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

89.     Throughout the course of the conspiracy, the Defendants secretly met at least 1,000 times, to communicate and ultimately coordinate, about various facets of the German Luxury Vehicles industry including technology, costs, supplies, markets, and emissions equipment. The Defendants' surreptitious meetings successfully concealed the decades-long conspiracy, as reflected by the fact that it did not become public until July 21, 2017.

90.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by the Defendants and their co-conspirators, Plaintiffs and the members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether the conspiracy existed, until at the earliest July 21, 2017, the date that Der Spiegel reported that Volkswagen had disclosed to German officials its participation in the conspiracy alleged herein.

91.     For these reasons, the statute of limitations applicable to Plaintiffs' and the Class's claims was tolled and did not begin to run until July 21, 2017, at the earliest.

## FIRST CLAIM FOR RELIEF
### Violations of MGL, c. 93A

92.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

93.    Defendants willfully and knowingly engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Commonwealth's consumer protection and unfair competition statute, MGL, c. 93A.

94.    Defendants were engaged in trade or commerce as defined by MGL c. 93A.

95.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in the Commonwealth, by affecting, fixing, controlling and/or maintaining at artificial or non-competitive levels, the prices at which German Luxury Vehicle were sold, distributed, or obtained in the Commonwealth and took efforts to conceal their agreements from Plaintiffs and members of the Class.

96.    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout the Commonwealth; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the Commonwealth; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra competitive, artificially inflated prices for German Luxury Vehicles.

97.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class were injured and are threatened with further injury.

## SECOND CLAIM FOR RELIEF
## Unjust Enrichment

98.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

99.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of German Luxury Vehicles.

100.    Defendants have knowingly benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the over payments made by Plaintiffs and the members of the Class for German Luxury Vehicles.

101.    Plaintiffs and the members of the Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Class may make claims on a pro rata basis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the Class respectfully request that:

1.    The Court determine that this action may be maintained as a class action under Rule 23 of the Massachusetts Rules of Civil Procedure;

2.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed acts of unjust enrichment by Defendants and in violation of MGL c. 93A;

23

3.     Plaintiffs and members of the Class recover damages, to the maximum extent allowed under law and that a joint and several judgment in favor of Plaintiffs and members of the Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

4.     Plaintiffs and members of the Class recover damages, to the maximum extent allowed under law, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

5.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from continuing or renewing in any manner the conduct, contract, conspiracy, or combination alleged herein, or from entering into any contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect.

6.     Plaintiffs and members of the Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of enrichment;

7.     Plaintiffs and members of the Class be awarded pre and post judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

8.     Plaintiffs and members of the Class recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

9.     The Court award such other and further relief as it may deem just and proper.

24

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Massachusetts Rules of

Civil Procedure, of all issues so triable.

Dated: August 7, 2017                              Respectfully submitted,

Glen DeValerio (BBO# 122010)
Daryl D. Andrews (BBO# 658523)
ANDREWS DEVALERIO LLP
265 Franklin St., Suite 1702
Boston, MA 02110
Tel: 617-936-2796
glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

*Attorneys for Plaintiffs and the putative Class*

25